IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| | CHAPTER 13 |
| STEPHEN FRANCIS KESSLER and | |
| LISA KATHERINE KESSLER dba | |
| Locust Motors, | |
| | CASE NO. 1-09-bk-01292 RNO |
| Debtors | |

***

| | |
|---|---|
| METRO BANK f/k/a COMMERCE | |
| BANK/HARRISBURG, N.A., | |
| Plaintiff | |
| v. | |
| STEPHEN FRANCIS KESSLER and | ADV. NO. 1-10-ap-00046 RNO |
| LISA KATHERINE KESSLER dba | |
| Locust Motors, and M KEVIN RICKER | |
| BUILDER | |
| Defendants | |

# OPINION[1]

### I. Procedural History

This Adversary Proceeding was commenced by a Complaint filed by Metro Bank f/k/a Commerce Bank/Harrisburg, N.A. ("Metro Bank") on February 9, 2010. The Complaint seeks a determination of lien priority on 1196 Oliver Lane, Lower Paxton Township, Pennsylvania ("Oliver Lane Property"). Specifically, Metro Bank seeks a declaration that its mortgage lien has priority over the mechanic's lien of Defendant, M Kevin Ricker Builder ("Builder"), on that same property. On March 10, 2010, Builder filed a Motion to transfer this Adversary Proceeding to the Court of Common Pleas of Dauphin County. The Motion was withdrawn in open court at a

---

[1] Drafted with the assistance of William C. Blasses, Esq., Law Clerk

1

March 18, 2010, status conference.

Subsequently, on March 22, 2010, Builder filed the Motion of M. Kevin Ricker Builder for Abstention ("Abstention Motion"). Metro filed an Answer on April 2, 2010. A hearing was held on April 22, 2010. At the hearing, a briefing schedule was set and the Abstention Motion was taken under advisement. Builder filed its Brief on April 30, 2010. On May 10, 2010, the Kesslers and Metro Bank each filed a Brief. This matter is now ripe for decision. The issue is whether this Court should abstain from hearing the subject Adversary Proceeding. For the reasons set forth below, I conclude that, although mandatory abstention is inapplicable to this proceeding, I will permissively abstain from hearing this Adversary Proceeding.

**II. Facts**

Defendants, Stephen Francis Kessler and Lisa Katherine Kessler (collectively "the Kesslers"), filed a Chapter 13 Voluntary Petition on February 26, 2009. The Kesslers own the Oliver Lane Property subject to the Metro Bank and Builder liens. Both Builder and Metro Bank have obtained relief from the automatic stay to pursue state court remedies.[2] As stated in Builder and Metro Bank's Briefs, a sheriff's sale of the Oliver Lane Property is currently scheduled for June 3, 2010.[3] No plan has been confirmed in the underlying Chapter 13 bankruptcy case.

**III.   Discussion**

28 U.S.C. § 1334(c) provides two separate avenues for abstention, commonly known as permissive and mandatory abstention. 28 U.S.C. § 1334(c) provides that:

---

[2] The Relief from Stay Motions, as well as the subsequent Orders granting relief, can be found on the docket of the underlying bankruptcy, 1-09-bk-01292-RNO. The Motions can be found at Docket Nos. 23 (Metro Bank) and 43 (Builder) and the Orders can be found at Docket Nos. 88 and 94, respectively.

[3] This is stated on pages 3 and 4 of Builder's Brief at Docket No. 18 and page 2 of Metro Bank's Brief at Docket No. 20.

2

> (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a state law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Before discussing whether either mandatory or permissive abstention is appropriate, I find it necessary to first determine whether I have jurisdiction over this proceeding. The parties dispute the extent to which this Court has jurisdiction. As set forth more specifically in subsections B and C below, the extent to which I have jurisdiction directly relates to certain relevant factors for permissive and mandatory abstention. Therefore, I will first determine what type of jurisdiction, if any, I have over this proceeding.

### A. Jurisdiction

The parties appear to disagree over whether this Court has "core" or merely "related to" jurisdiction over this proceeding. Metro Bank argues that this Court has "core" jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(K).[4] Builder argues that this Court does not have "core" jurisdiction and that any relatedness to the main case is remote.[5] The Kesslers appear to concede that this proceeding is non-core but argue that this Court has "related to" jurisdiction over this

---

[4] Metro Bank's Br. 4.

[5] Builder's Br. 7-10, 12.

3

case and should, therefore, not abstain.[6]

Bankruptcy courts only have the limited authority vested in them by Congress in federal statutes. *In re Resorts Intern., Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) (referencing *Bd. of Governors v. MCorp. Fin., Inc.*, 502 U.S. 32, 40, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991)). "Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005)). "The category of cases 'under' title 11 'refers merely to the bankruptcy petition itself.' " *Stoe*, 436 F.3d at 216 (citing *In re Combustion Eng'g, Inc.*, 391 at 225-226 n. 38). "A cases 'arises under' title 11 'if it invokes a substantive right provided by title 11.' " *Stoe*, 436 F.3d at 216 (citing *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996)).

"The category of proceedings 'arising in' bankruptcy cases 'includes such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens'. . . . Proceedings 'arise in' a bankruptcy case, 'if they have no existence outside of the bankruptcy.' " *Stoe*, 436 F.3d at 216 (citing *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)). ". . . a proceeding is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " *Stoe*, 436 F.3d at 216 (citing *In re Pacor, Inc. v. Higgins*, 743 F.3d 984, 994 (3d Cir. 1984)).

---

[6] Kesslers' Br. 4.

### (1) Core Jurisdiction

Cases "under" title 11, proceedings "arising under" title 11, and proceedings "arising in" a case under title 11 fall within a bankruptcy court's "core jurisdiction". The Third Circuit recently gave further guidance for determining whether a claim is "core" in *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) and *In re Winstar Communications, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009). "In order to evaluate whether a claim is 'core,' a court must first look to the illustrative list of 'core' proceedings found in § 157(b)(2). It must then conduct this Court's two-step test, according to which a claim will be deemed core 'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *In re Exide Technologies*, 544 F.3d at 206 (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)); *In re Winstar Communications, Inc.*, 554 F.3d at 405.

28 U.S.C. § 157(b) does not give a precise definition to determine whether a proceeding is "core" but rather ". . . provides an illustrative list of proceedings that **may** be considered 'core.'" *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (emphasis added). "It is important, however, that a court 'not simply [] apply the terms of the statute but rather [] analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction . . ., that claim should be considered a core proceeding." *In re Exide Technologies*, 544 F.3d at 207 (citing *Meadowlands Commc'n, Inc. v. Banker's Trust Co.*, 79 B.R. 198, 199-200 (D.N.J. 1987).

This approach is designed to be mindful of the constitutional limitations highlighted by *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73

L.Ed.2d 598 (1982). *See Beard v. Braunstein,* 914 F.2d 434, 443-445 (3d Cir. 1990) (discussing different approaches to interpreting the categories of 28 U.S.C. § 157 within the limits of the Constitution). A claim might not be "core" even if it appears to fall within one of the illustrative examples of 28 U.S.C. § 157(b)(2); *See, e.g., In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996). *Beard*, 914 F.2d at 444-445 (finding that although the plaintiff could argue that the case fell within 28 U.S.C. § 157(b)(2)(E), a closer analysis led to a determination that the proceeding was not "core").

  In the present case, I first look to the list of examples of core proceedings in 28 U.S.C. § 157(b)(2). As noted by the parties, one of the illustrative examples, 28 U.S.C. § 157(b)(2)(K), specifically includes "determinations of the validity, extent, or priority of liens." I must next look to whether the proceeding invokes a substantive right provided by Title 11 or if the proceeding could, by its nature, only arise in a bankruptcy case. This will help determine whether the bankruptcy court's jurisdiction over this particular proceeding to determine lien priority is, in fact, core. None of the Briefs appear to argue that this proceeding invokes a substantive right provided by Title 11, and I find that it does not invoke any such substantive right. Metro Bank argues that this proceeding arises in the context of a bankruptcy case because the subject property is property of the estate.[7] This appears to be a misreading of Third Circuit law, which maintains as set out above, that a true core proceeding could **only** arise in context of a bankruptcy case. *In re Exide Technologies*, 544 F.3d at 206.

  I find that Pennsylvania law allows for a determination of lien priorities. As noted in *Indymac Bank v. Arczip, Inc.*, "[g]enerally, a lien holder has the opportunity to contest the

---

    7  Metro Bank's Br. 4.

priority of another creditor's lien in connection with a sheriff's execution proceedings." *Indymac Bank v. Arczip, Inc.*, 2006 WL 3460033, *3 (Pa.Com.Pl. 2006). The case references Pa. R. Civ. P. 3136. *Id.* at *3 n.12. Rule 3136 subsections (d) through (f) provide a system for the filing and treatment of "exceptions" to a proposed distribution following a sheriff's sale. The Rule provides a process ". . . requiring a priority creditor to justify the legitimacy of its claimed distributions in order to safeguard the rights of junior creditors." *State Street Bank v. Petrey*, 819 A.2d 581, 584 (Pa.Super. 2003).

If, for some reason, this Pennsylvania procedural process were not available, it appears that parties can file a declaratory action in state court. *See e.g. Indymac Bank*, 2006 WL 3460033 at *3 (finding that, in the absence of another forum, the state court "must provide a venue in accordance with the rules governing sheriff's sales."); *See, generally, Grambo v. South Side Bank & Trust Co.*, 14 A.2d 925 (Pa.Super. 1940) (finding that the lien priority dispute was properly adjudicated under the Uniform Declaratory Judgment Act). In the present case, it is my understanding that a sheriff's sale was already scheduled for June 3, 2010, and that, therefore, the distribution process should begin shortly thereafter.

The Complaint requests a determination of lien priority between two pre-petition liens and is primarily a dispute between two non-debtor parties.[8] Metro Bank never alleged that the filing of bankruptcy gave rise to the dispute. The priority issues originated when the liens came into being. Jurisdiction is not conferred just because the parties waited for the Kesslers to file bankruptcy before filing a Complaint to determine priority. If the bankruptcy had never existed, the dispute would still remain, and the parties could adjudicate the lien priorities in a state forum.

---

[8] Compl. p. 5-6; Kesslers' Br. 5-6.

Therefore, I find that I do not have core jurisdiction over these proceedings.

### (2) "Related to" Jurisdiction

The Kesslers also argue that, if not core, then this proceeding falls within the bankruptcy court's "related to" jurisdiction.[9] "Non-core 'related to' jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction . . ." *In re Resorts Intern., Inc.*, 372 F.3d at 163 (citing *Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997)). While "related to" jurisdiction is not limitless, the Third Circuit follows the test created in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), which provides that a bankruptcy court has "related to" jurisdiction over a proceeding "if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " *In re Resorts Intern., Inc.*, 372 F.3d at 164 (quoting *Pacor, Inc.*, 743 F.2d at 994).

In the present case, Builder notes that because the automatic stay has already been lifted with respect to the Oliver Lane Property, the connection between this case and the Adversary Proceeding has become "rather remote".[10] In response, the Kesslers argue that the property is still property of the estate and that the outcome of these proceedings could have an effect on the bankruptcy estate. More specifically, they note that Metro Bank's Complaint states that one basis for finding priority of Metro Bank's lien is the allegation that Builder's lien is invalid.[11] The Kesslers maintain that if it is determined that Builder's lien is invalid, then the estate may have equity in the Oliver Lane Property.[12] I agree that any finding that the lien is invalid could

---

[9] Kesslers' Br. 5.

[10] Builder's Br. 12.

[11] Kesslers' Br. 4; Compl. ¶ 18(a).

[12] Kesslers' Br. 4.

8

conceivably impact the amounts available for distribution to unsecured creditors and, therefore, could conceivably have an effect on the estate. As noted by the Third Circuit in determining whether an effect is "conceivable", a finding of certainty or likelihood is not required. *In re Resorts Intern.*, *Inc*., 372 F.3d at 164 (citing *In re Marcus Hook*, 943 F.2d 261, 264 (3d Cir. 1991)). Furthermore, any findings as to priority of the liens will aid in determining the extent to which each creditor's claim may be unsecured and the extent to which each creditor will share in distributions to general unsecured creditors. Therefore, I conclude that this proceeding falls within "related to" jurisdiction. Having determined the jurisdictional category that this proceeding falls within, I will now consider whether mandatory abstention applies to this proceeding.

### B. Mandatory Abstention - 28 U.S.C. § 1334(c)(2)

First, I will acknowledge the timeliness of Builder's Abstention Motion. Metro Bank does not argue the timeliness of Builder's Abstention Motion in its Brief. The Kesslers concede that Builder's Abstention Motion is timely, noting that Builder had raised the issue of abstention prior to even filing an answer.[13] Approximately twenty-nine days after the Adversary Proceeding's filing date of February 9, 2010, Builder filed the Motion of M. Kevin Ricker Builder to Transfer Adversary Proceeding/Change Venue. At a status conference on March 18, 2010, Builder withdrew that Motion to file the Abstention Motion presently at issue. On March 22, 2010, Builder filed the present Abstention Motion. Given that Builder has taken prompt steps with regard to making a motion for abstention, I find that the Abstention Motion is timely. I will, therefore, consider the merits of the Abstention Motion.

---

[13] Kesslers' Br. 3.

The Third Circuit has stated that abstention is mandatory if five requirements are met:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe*, 436 F.3d at 213.

The first requirement is that the proceeding is based on a state law claim. Metro Bank, in the permissive abstention portion of its Brief, notes that the lien priority is a question of state law.[14] No party has cited to or raised a section of the Bankruptcy Code or other applicable federal law as being at issue in this case. Therefore, the first requirement is satisfied.

The second requirement is that the "claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11, . . . ." *Stoe*, 436 F.3d at 213. As discussed above, this proceeding does not fall within "core" jurisdiction. As such, it does not "arise under" Title 11 and does not "arise in" a case under Title 11. However, this proceeding does fall within "related to" jurisdiction. Therefore, this requirement is satisfied.

The third requirement is that no independent federal jurisdiction exists outside of bankruptcy jurisdiction. The Kesslers concede that this action could not have been brought in federal court absent bankruptcy.[15] As noted above, Metro Bank, in the permissive abstention portion of its Brief, notes that the lien priority is a question of state law and that there is no other

---

[14] Metro Bank's Br. 7-8.

[15] Kesslers' Br. 4.

10

basis for subject matter jurisdiction in federal court.[16] I agree and find that there is no independent basis of jurisdiction.

The fourth and fifth requirements are that "an action 'is commenced' in a state forum of appropriate jurisdiction" and that "the action can be 'timely adjudicated' " *Stoe*, 436 F.3d at 213. Builder maintains that it has filed a complaint seeking to enforce its rights under the Pennsylvania Mechanic's Lien Law but concedes that no declaratory judgment action has yet been filed in state court.[17] Builder argues that the requirement does not mandate that the state court complaint involve the exact same cause of action.[18] However, in analyzing whether abstention is mandatory, the court in *In re Bay Vista of Virginia, Inc.* found that implicit in the requirement of a parallel state court proceeding is the requirement that the state court proceeding involve determination of the issues present in the federal proceeding. *In re Bay Vista of Virginia*, 394 B.R. 820, 843 (Bankr. E.D.Va. 2008). Builder has presented no reason as to why a state court proceeding on different issues, albeit similar subject matter, should apply; I find that such an interpretation would make the requirement less meaningful.

Builder further maintains that the fifth requirement is satisfied because there does not appear to be a reason why the Court of Common Pleas of Dauphin County could not timely adjudicate this issue.[19] Metro Bank acknowledges that a state court action to enforce Builder's mechanic's lien is pending and Metro has a foreclosure action progressed to the point of a

---

[16] Metro Bank's Br. 7-8.

[17] Builder's Br. 5.

[18] Builder's Br. 5.

[19] Builder's Br. 6.

11

pending sheriff's sale.[20] Metro Bank argues, however, that neither action will determine the relative priorities of the competing liens.[21] No party has presented the Court with any pleadings or other evidence that would indicate that any presently filed state court action would necessarily adjudicate the priorities of Builder's and Metro Bank's liens. From the evidence and facts presented, I am not aware of whether the sheriff's sale of the Oliver Lane Property has, in fact, already occurred and whether the above-mentioned Pennsylvania law "exceptions" process is, therefore, available. Therefore, I find that the fourth requirement has not been satisfied. As mandatory abstention requires all five requirements to be satisfied, I need not discuss requirement five. With mandatory abstention being inapplicable, I will now consider permissive abstention.

### C. Permissive Abstention - 28 U.S.C. § 1334(c)(1)

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1). No clear guidance from the Third Circuit exists on permissive abstention as the Third Circuit has generally recognized that it does not have jurisdiction to review decisions of the bankruptcy and district courts regarding permissive abstention. *See Bricker v. Martin*, 265 Fed.Appx. 141, 141 (3d Cir. 2008) ("Moreover, we do not have jurisdiction to examine the District Court's review of the Bankruptcy Court's abstention."); *In re Seven Fields Development Corp.*, 505 F.3d 237, 249 (3d Cir. 2007) ("Thus, we have recognized that, as section 1334(d) now stands, '. . . appeals of decisions involving permissive abstention, whether or not the court abstains, are barred, . . .' "). However, most courts apply a twelve factor test to determine whether permissive abstention is appropriate:

---

[20] Metro Bank's Br. 5.

[21] Metro Bank's Br. 5.

Case 1:10-ap-00046-RNO    Doc 22    Filed 06/22/10    Entered 06/22/10 11:52:43    Desc
Main Document    Page 12 of 20

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.
>
> *In re Fruit of the Loom, Inc.*, 407 B.R. 593, 599-600 (Bankr. D.Del. 2009) (citing *In re LaRoche Indus.*, 312 B.R. 249, 253-254 (Bankr. D.Del 2004)); *In re DBSI, Inc.*, 409 B.R. 720, 728-729 (Bankr. D.Del. 2009). *See also Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (quoting *In re Eastport Assoc.*, 935 F.2d 1071, 1075 (9th Cir. 1991); *In re Holiday RV Superstores, Inc.*, 362 B.R. 126, 130 (D.Del. 2007); *Allen v. J.K. Harris & Co., LLC*, 331 B.R. 634, 645 (E.D.Pa. 2005); *Bricker v. Martin*, 348 B.R. 28, 34 (W.D.Pa. 2006).

In evaluating these factors, it is important not to engage in a mere mathematical exercise weighting all factors equally. *In re Fruit of the Loom, Inc.*, 407 B.R. at 600. Factors including the affect on the estate's administration, whether the state law issues predominate, and whether the proceeding is core or non-core are more substantial than some of the other factors. *Id.*

### (1) The effect of lack thereof of abstention on the efficient administration of the estate.

Builder argues that abstention would have no adverse impact on the estate's administration as relief from stay has already been granted to both Builder and Metro Bank to enforce their rights in the Oliver Lane Property in state court.[22] The Kesslers maintain that, while

---

[22] Builder's Br. 10.

relief has been granted, a determination that Metro Bank's lien has priority due to a finding that Builder's lien is invalid could potentially result in equity for the estate.[23] The Kesslers further argue that abstention would have a net negative impact on the estate.[24] Metro Bank appears to agree with the Kesslers' argument but did not go so far as to argue that a determination of invalidity would result in equity for the estate.[25]

While relief from stay has been granted to pursue state court remedies, it does not necessarily follow that the estate has no interest or potential interest in the Oliver Lane Property. Although no evidence has been submitted to show that any finding would likely result in the existence of unencumbered equity in the Oliver Lane Property, I do agree that the clarification of the respective creditors' rights may benefit the administration of the estate. I also note that the underlying Chapter 13 case is still in its early stages. The case has been open for approximately one year and four months; no plan has been yet confirmed. It appears that while quick disposition of this proceeding may be preferable to the parties, time is not necessarily of the essence. So long as the issues of priority and validity are decided prior to the closing of the case, a party may choose to invoke 11 U.S.C. § 1329(a) to modify any confirmed plan to account for any new equity or adjustment in the treatment of creditors. I, therefore, find that this factor only slightly weighs against permissive abstention.

### (2) The extent to which state law issues predominate over bankruptcy issues.

The issues invoked in this proceeding are state law priority issues, as noted by all

---

[23] Kesslers' Br. 4.

[24] Kesslers' Br. 5.

[25] Metro Bank's Br. 7.

parties.[26] Metro Bank appears to argue that because the determination of property of the estate under 11 U.S.C. § 541 is affected by the state law issues, state law issues do not predominate.[27] Builder conversely argues that this proceeding is a case of first impression under the relatively recently amended Pennsylvania Mechanic's Lien Law, not federal bankruptcy law.[28] I agree with Builder. Although the issues affect property of the estate, the mere impact on the estate is not enough to change this issue from one of purely state law to a mix of state and federal bankruptcy law. I find that this factor weighs heavily in favor of abstention.

**(3)    The difficulty or unsettled nature of the applicable state law.**

Builder maintains that this is a case of first impression and statutory interpretation regarding Pennsylvania's recently amended Mechanic's Lien Law.[29] Specifically, he argues that a question exists as to whether certain portions of the law should be given retroactive effect.[30] This is apparently because Builder commenced construction prior to January 1, 2007. Metro Bank, on the other hand, argues that if I find that Builder's lien is invalid under the Mechanic's Lien Law, there is no need to determine any unsettled issues of priority.[31] Regardless, one of the issues presently existing in this proceeding is an unsettled matter of statutory construction of a Pennsylvania, not federal, statute. Specifically complicating the matter is the issue of whether the amendments to the Mechanic's Lien Law, effective January 1, 2007, have retroactive application

---

[26]    Metro Bank's Br. 7; Builder's Br. 11; Kesslers' Br. 5.

[27]    Metro Bank's Br. 7.

[28]    Builder's Br. 11.

[29]    Builder's Br. 11.

[30]    Builder's Br. 11.

[31]    Metro Bank's Br. 7.

15

to the mechanic's lien at issue in this case. Therefore, this factor weighs in favor of abstention.

### (4) The presence of a related proceeding commenced in state court or other non-bankruptcy court.

Metro Bank argues that this factor weighs strongly against abstention because no declaratory action to determine priority has been filed in state court.[32] Metro Bank maintains that the lack of such a complaint will cause a delay in a determination of priority.[33] This argument is similar to one of Metro Bank's arguments regarding mandatory abstention. As discussed above, Metro Bank has conceded the existence of a state court proceeding to enforce the mechanic's lien.

I appreciate that choosing to abstain may, in fact, delay a determination of lien priority. However, I am concerned that Metro Bank is seeking a determination that Builder's lien is invalid. Such a determination would surely have an impact on Builder's state court mechanic's lien action. In discussing the requirement of a parallel proceeding for mandatory abstention, the Third Circuit noted that the statutory provision of mandatory abstention is based on comity. *Stoe*, 436 F.3d at 214. Given that this permissive abstention factor is similar in nature to the mandatory abstention requirement of a parallel proceeding, I am inclined to believe that comity is a significant consideration in permissive abstention. So, while I prefer to minimize delays to litigants, I also am conscious that making a decision in this proceeding has a great potential to conflict with or render a nullity, an underlying state court proceeding. Furthermore, I am conscious that the "exceptions" procedures found in Pa. R. Civ. P. 3136, as discussed above, are available to adjudicate this dispute in a prompt manner. Therefore, I find that this factor weighs

---

[32] Metro Bank's Br. 7.

[33] Metro Bank's Br. 7.

16

in favor of abstention.

        **(5)      The jurisdictional basis, if any, other than 28 U.S.C. § 1334.**

As discussed above with regard to mandatory abstention, all of the parties concede that no non-bankruptcy federal jurisdictional basis exists. I do not find that any additional jurisdictional basis exists. Therefore, this factor weighs in favor of abstention.

        **(6)      The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.**

As discussed in consideration of jurisdiction, the outcome of this proceeding could conceivably have an impact on the administration of the estate. It has been argued that a determination that Builder's lien is invalid may result in equity for the estate. However, no evidence or specific values have been presented to support this assertion. As noted in my discussion of factor one, the bankruptcy estate will not be negatively impacted if this dispute is decided in state court and the plan is later modified to reflect the outcome of the proceeding. While this proceeding is, therefore, related to the main bankruptcy case, I find that the mere determination of priority itself is relatively remote and creates no great urgency for these issues to be decided by this Court. I, therefore, weigh this factor as weighing slightly in favor of permissive abstention.

        **(7)      The substance rather than the form of an asserted "core" proceeding.**

As discussed above with regards to jurisdiction, I have no "core" jurisdiction over this proceeding. While the issues of priority and validity of a lien appear to fit within the 28 U.S.C. § 157(b)(2)(K) category of "determinations of the validity, extent, or priority of liens," proper application of the Third Circuit's additional two-part test reveals that this proceeding is, in fact, not "core" and only "related to" the main bankruptcy proceeding. Therefore, I find that this

17

factor weighs in favor of abstention.

> **(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court.**

In this proceeding, all of the claims are purely state law in nature. Therefore, no severance of the claims form core bankruptcy matters is possible. Metro Bank argues that this factor should be considered in light of efficiency and potential delay in determination by the state court.[34] While a creative argument, I find the argument unpersuasive. This factor specifically contemplates the ability of the bankruptcy court to defer a decision to the state court and then act to enforce any decision rendered by the state court. In the present case, the main bankruptcy case is still in its early stages and any protracted litigation can be accommodated by amending the bankruptcy plan. Regardless, this factor ultimately examines the severability of state law claims from core bankruptcy matters. As no core bankruptcy matters exist, this factor favors abstention.

> **(9) The burden of the court's docket.**

Presently, the Court's docket is very active but manageable. Determination of issues in this case appear to potentially require a use of a significant amount of the Court's resources. Overall, I consider this factor to be neutral in weight as it applies to permissive abstention.

> **(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.**

None of the parties argue that the commencement of this proceeding in bankruptcy court involved any forum shopping. I also see no indication that forum shopping was involved. Therefore, this factor slightly weighs against abstention.

---

[34] Metro Bank's Br. 8.

18

**(11) The existence of a right to a jury trial.**

No request for a jury trial has been made, and no argument has been advanced that a jury trial is appropriate. Therefore, I find this factor to be inapplicable.

**(12) The presence in the proceeding of non-debtor parties.**

As discussed above, the dispute in this case centers on two non-debtor parties. The primary issue is the priority of liens between Metro Bank and Builder. The Kesslers merely are debtors of the bankruptcy estate of which the Oliver Lane Property is part. Therefore, this factor weighs in favor of abstention.

After considering all of the factors and weighting them accordingly, I believe it is appropriate to permissively abstain from deciding this proceeding. It appears that the strongest argument for not abstaining is the potential for delay if this matter is heard in state court. The sole factor weighing against abstention, therefore, was the first factor, regarding efficient administration of the estate. While a delay might not be optimal, any potential delay should have no net effect on the administration of the estate. The concerns associated with the other factors greatly outweigh this factor. Specifically, the likelihood that I will have to decide issues of first impression under Pennsylvania state law and that a decision might affect or render a nullity an underlying state proceeding weigh heavily in favor of abstention.

Additionally, state law issues not only predominate, as discussed with regard to factor two, they are the only issues in this Adversary Proceeding. As noted by factor eight, this Court is in a good position to enforce any decision rendered by the state court. Factors five and seven weigh in favor of abstention because jurisdiction is only "related to" and there is no independent federal basis for jurisdiction outside the bankruptcy court. Lastly, the issues at the center of this

dispute are primarily between two non-debtor parties. While the debtors are joined in the action, they were joined as defendants, and their only apparent link is that the Oliver Lane Property is part of the main case's bankruptcy estate. Therefore, in light of the significant weight of the factors favoring abstention, I will permissively abstain from hearing this proceeding.

### IV. Conclusion

For the reasons set forth above, mandatory abstention is not applicable to this proceeding. However, I find that permissive abstention is appropriate and will, therefore, abstain from further consideration of this proceeding. An Order will be entered consistent with the foregoing Opinion.

By the Court,

Date: June 22, 2010

Robert N. Opel, II, Bankruptcy Judge
(BI)

*This opinion is electronically signed and filed on the same date.*